Tueley J.
delivered the opinion of the court.
This is an action on the case, brought by the plaintiif against Robert Baker and Leroy Potts, to recover damages against them for having,.as judges of an election, fraudulently, corruptly and maliciously refused to permit him to vote; he at the same time being a legal voter by the laws of the State, and as such entitled to vote therein.
Upon the trial the jury found a verdict for thfe defendants, upon the ground, that they had acted in good faith, and without malice, in refusing to permit the plaintiif to vote, though from the proof in the cause, they themselves were satisfied that the plaintiff was a free white man, and entitled by the laws of the state to have voted in the election. Upon this verdict there was judgment for the defendants; and an appeal by the plaintiff 'to this court.
The question for our consideration, is, whether, in the. State of Tennessee the judges of an election are responsible in damages for refusing to receive the vote of a legally qualified voter, they at the time not being actuated by any fraudulent, corrupt or malicious intention, but acting in good faith, and giving their judgment upon the honest conviction, that he was not at the time entitled to a vote under the laws of the state regulating elections.
This' is the first case of the kind which has arisen in this state; and it is one of much interest and importance. In a government constituted as ours is, upon a basis of equality amongst its citizens, and depending for its administration upon the will of the majority, the right of voting in elections cannot be too highly estimated; and heavy penalties should be inflicted upon those to whom the different elections are trusted, for fraudulen tly, maliciously and corruptly preventing any legal voter from exercising the privilege. But the high value *228 which should be, and is attached to this privilege, while it shows on the one hand, that it should never be unjustly denied, also shows upon the other, that it should never be permitted, when it is not guarantied by the law. The purity of elections is the surest foundation of our republican institutions; these cannot be maintained, but by seeming the right of voting to him who is qualified by the law to exercise it, and withholding it from him who is not. In order to do this, some person or persons must be entrusted by law with the determina- ' tion of the facts arising out of this right, and this determination must of necessity be final in any election, as the vote is by ballot in this state, and there is and can be no appeal.
Judges of elections are in all cases appointed under the law; they have full power to hear and determine all legal objections to the reception of the vote of any individual offering it; this of necessity will frequently involve difficult investigations of law and of fact. The right of suffrage being so greatly extended as to embrace every free white male of twenty-one years of age, who may be a citizen of the United States, and a resident of that county wherein he may propose to vote six months previously thereto, extended as it is to all naturalized foreigners from every quarter of the globe, except the African negro and his descendants to a specified degree; it must of necessity follow, that there will be questions as to qualification of voters arising out of their ages, their citizenship, the length of time they have been residents of the county and state; and if the judges of the different elections are to be held liable in damages for errors of judgment relative thereto after an honest and faithful investigation, the responsibility of the office will be so great that no man will willingly accept it. But why should ho be so held responsible? It is unquestionably a judicial office; no other judicial officer of the *229 state is so held responsible, and we see no reason for extending it to him.
This question came up for consideration in the case of Jenkins and others vs. Waldron, 11th John. Rep. 113, where it was held, after much and careful consideration, “that an action on the case will not lie against the inspectors ,of an election for refusing the vote of a person legally qualified to vote, without proving malice express or implied, and that it would be opposed to all the principles of law, justice and sound policy to hold, that officers, called upon to exercise their deliberate judgments, are answerable for a mistake in law, either civilly or criminally, when their motives are pure and untainted with fraud or malice.”
It ha» been supposed, that the case of Ashby vs. Whyte and als., reported in Lord Raymond, 938, and finally disposed of in the house of lords, is in conflict with this view of the subject; but the judge, who delivered the opinion of the court in the case of Jenkins and others vs. Waldron, shows therein, most conclusively, that this is not so. He says: “the declaration in that case alledged, that the rejection of Ashby’s vote was done fraudulently and maliciously, and although the jury found the defendant guilty, the judgment was arrested by three judges, in opposition to the opinion of chief justice Holt. This judgment was afterwards reversed in the house of lords; the reasons for the reversal do not appear in the report of the casé, but the ground of the reversal is distinctly stated in the resolutions of the lords, in answer to the resolutions of the commons, reprehending the bringing the action and the judgment thereon. The first resolution of the lords states, “that by the known laws of the kingdom, e\ ery free-holder, or other person, having the right to give his vote at the election of members to serve in parliament, and being wilfully denied, or hindered so to do, by the officer who ought to receive the same, may maintain an action in the Queen’s courts against *230 such officer, to assert his right, and to recover damages for the injury.”
There is no instance in England of an action of this sort, maintained for an act arising only from an error of judgment.
It is true, that a different rule of action prevails in the State of Massachusetts, by the decision of her courts: we are not satisfied with the reasoning of the cases, hut in as much as they are not authoritative here, we have not deemed it necessary to discuss them; it is sufficient that we do not think proper to follow them.
The judgment of the circuit will, therefore, he affirmed.